IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| TIMEKIA NIKIA PALMER,<br><br>          Plaintiff,<br><br>     vs.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>          Defendant. | Civil No. 24-00128 MWJS-KJM<br><br>ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |

## INTRODUCTION

Plaintiff Timekia Palmer, proceeding pro se, appeals the decision of the Commissioner denying her application for Social Security disability benefits. The Commissioner found that Palmer was not disabled within the meaning of the Social Security Act because there were available sedentary jobs she still could perform. In her appeal, Palmer challenges the Commissioner's finding. Given the deferential standard of review that applies, the Court must AFFIRM.

## BACKGROUND

1. Palmer initially applied for disability benefits in 2009, and when that application was denied at the initial level, she requested review by an Administrative Law Judge (ALJ). In September 2013, the ALJ denied Palmer's application, finding she was not disabled because she "could perform a full range of work at all exertional

levels," with certain "nonexertional limitations."  ECF No. 18-3, at PageID.331 (Administrative Record (AR) at 49).  In plain terms, the ALJ found that Palmer could still perform available work.

In December 2019, Palmer applied again for disability benefits—specifically, for supplemental security income—and the application was again denied at the initial level.  Palmer requested a hearing before an ALJ, which took place in December 2022.  *Id.* at PageID.992-1033 (AR at 710-751).  At the hearing, Palmer agreed that although she has mental health impairments, her "medications have helped [her] pretty regularly" and she has "achieved a level of stability" in that area.  *Id.* at PageID.1005 (AR at 723).  But Palmer explained that a pair of low-speed car accidents derailed her work efforts.  *Id.* at PageID.1006-08 (AR at 724-26).  In June 2020, Palmer began working for the post office in Philadelphia, Pennsylvania.  Eleven days later, Palmer was in her car in a parking lot when another car "came back out of this parking lot and, like, destroyed my car, totaled it in the parking lot."  *Id.* at PageID.1002 (AR at 720).  Palmer sustained injuries to her "neck, discs in [her] neck and in [her] back and in [her] right shoulder, and [she sustained] nerve damage."  *Id.*

Palmer underwent physical therapy, and by November 2020, her physician had authorized her to return to work with no restrictions.  *Id.* at PageID.1006-07 (AR at 724-25); *see also id.* at PageID.320 (AR at 38).  But then in March 2021, Palmer was at a carwash when "a car came through and hit" her vehicle.  *Id.* at PageID.1007 (AR at 725);

*see also id.* at PageID.1007-08 (AR at 725-26) ("He forgot to put his car in neutral and he accidentally stepped on the gas."). Palmer testified about the effects of this second car accident and about her eventual move from Philadelphia to Hawaiʻi. *See id.* at PageID.1008-10 (AR at 726-28).

After Palmer's testimony was complete, the ALJ heard testimony from a vocational expert (VE). The ALJ asked the VE to "assume a hypothetical individual of the claimant's age and education and with the past jobs [Palmer had] described." *Id.* at PageID.1024 (AR at 742). The ALJ further asked the VE to assume the individual was limited to "work at the light level of exertion" with certain additional limitations. *Id.* at PageID.1024-25 (AR at 742-43). In addition, the ALJ asked the VE to assume that the hypothetical person "needed a cane for ambulation." *Id.* at PageID.1028 (AR at 746). With these parameters, the VE testified that while the hypothetical person could not perform their past work, they could perform available jobs—including "addresser" (26,000 positions available nationwide), "[t]oy stuffer" (316,000 positions available nationwide), and "[p]olisher, eye glass frames" (62,000 positions available nationwide). *Id.* at PageID.1028-29 (AR at 746-47).

2. In an eighteen-page written decision dated June 9, 2023, the ALJ denied Palmer's application for supplemental security income. *Id.* at PageID.316-333 (AR at 34-51).

The ALJ first found that although Palmer had some earnings, she had not engaged in substantial gainful activity—that is, she had not been working to such a degree that she would be ineligible for disability benefits—in at least some time periods since the date of her December 2019 application. *Id.* at PageID.319-20 (AR at 37-38). The ALJ also found that Palmer had several severe impairments: "cervical and lumbar spine disc herniations; osteoarthritis of the right shoulder acromioclavicular joint; obesity; schizoaffective disorder; and anxiety disorder." *Id.* at PageID.320 (AR at 38). But the ALJ found that despite her severe impairments, Palmer still could perform "light work" with certain additional limitations. *Id.* at PageID.324 (AR at 42). Given this ability, the ALJ further found that although Palmer could no longer perform past work, she still could perform work available in significant numbers in the national economy—namely, as an "addresser," "toy stuffer," or "a polisher, eye glass frames." *Id.* at PageID.333 (AR at 51). And because Palmer was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," she was "not disabled" within the meaning of the Social Security Act and pertinent regulations. *Id.*

The ALJ recognized that Palmer had testified to having more serious symptoms that would preclude light work, but found that her testimony was "not entirely consistent with the medical evidence and other evidence in the record." *Id.* at PageID.325 (AR at 43). In particular, the ALJ explained that "[a]s for the claimant's

4

statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent [with the record] because the objective medical evidence and treatment history are not consistent with such allegations." *Id.* The ALJ wrote that Palmer's "mental impairments appear stable with medication management and conservative treatment, and her physical impairments improved with appropriate treatment." *Id.* The ALJ further found that "the record does not indicate that a hand-held assistive device is medically necessary," though the ALJ's ultimate findings accepted that limitation for the sake of argument. *Id.* at PageID.326 (AR at 44).

      The ALJ went into further detail about the reasons for these conclusions. As to mental health, the ALJ wrote that "mental health treatment notes" reveal that Palmer had been "generally doing well, eating and sleeping well," and that "her mental status [wa]s largely unremarkable with appropriate grooming and no impairment noted in her memory and attention/concentration." *Id.* at PageID.326 (AR at 44). The ALJ also observed that "[m]ore recent records find the claimant making well-laid plans to relocate to Hawaii, reports of medication effectiveness, and the claimant registering at the Y for physical activities and exercise." *Id.* From these medical records, the ALJ concluded that "[s]uch evidence supports no more than moderate mental health limitations," which the ALJ accounted for in concluding that Palmer could perform light work with certain additional limitations. *Id.* And the ALJ found that an April 2020 opinion from Dr. Garito, which was in the record and which found only moderate

5

mental health limitations, was "persuasive as it is consistent with the record as detailed herein." *Id.* at PageID.330 (AR at 48).

As to the two motor vehicle accidents, the ALJ noted that both were "low speed," and that while "[p]hysical therapy records show some limitations in range of motion and pain issues," there was "no mention of an assistive device." *Id.* at PageID.326 (AR at 44). No surgical procedures were needed, and in January 2022 Palmer "reported continuing to feel well and good, and continued to have physical and occupational therapy." *Id.* In February 2022, moreover, Palmer "reported registering at the Y for some physical activities and to do some exercises." *Id.* The ALJ recognized some physical limitations, but concluded they were adequately taken into account in determining Palmer's ability to perform light work with limitations. *Id.*

The ALJ further acknowledged that in April 2022, Pamela Ralph, M.D., "provided an assessment of the claimant, finding extreme limitations" in Palmer's ability to work. *Id.* at PageID.329 (AR at 47). But the ALJ did not credit Dr. Ralph's opinion, finding that it was "not persuasive as treatment records are very inconsistent with the marked and extreme limitations set forth [in Dr. Ralph's opinion], and the narrative comments are inconsistent with the treatment notes." *Id.*[1]

---

[1] The ALJ also found the April 2020 disability determination of the State agency medical consultant to be unpersuasive. That consultant had opined that Palmer "had no physical medically determinabl[e] impairments." *Id.* at PageID.329 (AR at 47). The ALJ also disregarded the September 2013 denial of Palmer's earlier application for disability benefits because there was "new and material evidence" in the record that

6

## **STANDARD OF REVIEW**

This Court must affirm an ALJ's disability determination unless "it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). As 42 U.S.C. § 405(g) puts it, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." And while "substantial" means "more than a mere scintilla," it requires "only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (cleaned up). This standard "is not high," *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), and "if evidence exists to support more than one rational interpretation," the Court "must defer to the [ALJ's] decision," *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 & n.1 (9th Cir. 2004). Ultimately, the "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

These review standards are deferential because, "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their

---

required the ALJ to make his own new determination without affording any presumption to the prior decision. *Id.* at PageID.331 (AR at 49).

discretion for that of the agency." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (cleaned up).

## DISCUSSION

No one disputes that Palmer suffers from severe impairments, both mental and physical. These impairments unquestionably limit Palmer's ability to perform work—indeed, as the ALJ found, they outright preclude Palmer from performing work she has performed in the past. *See* ECF No. 18-3, at PageID.331-32 (AR at 49-50). The ALJ nonetheless found that Palmer could perform light work with certain restrictions and determined that there are other jobs available in sufficient numbers in the national economy that Palmer could still perform. The question on appeal is not whether the Court agrees with the ALJ's findings, but instead whether there is substantial evidence to support them.

1. Construed liberally, Palmer's pro se brief argues that the ALJ's decision did not adequately consider "her disabilities and [that] she suffers from many debilitating degenerative illnesses that ha[ve] no alternative state [of] normalcy or 100% recovery." ECF No. 20, at PageID.2799. She notes her mental health limitations, as well as her physical limitations, including those caused by the two car accidents. *Id.* And while she does not challenge the VE's testimony about the availability of jobs for a hypothetical person with the limitations found by the ALJ, she does challenge the ALJ's findings that those are her limitations. In particular, Palmer contends that she was only

8

able to hold down her post office job because of reasonable accommodations that two managers provided. *See id.* at PageID.2800.

Accepting for the sake of argument that Palmer presents a fair, plausible interpretation of the medical records, the Court still cannot disturb the Commissioner's decision. That is because "if evidence exists to support more than one rational interpretation," the Court "must defer to the [ALJ's] decision," *Batson*, 359 F.3d at 1193 & n.1. As noted, the "ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041. Here, the ALJ found that Palmer's testimony about the severity of her symptoms was inconsistent with the medical evidence. That is a legally appropriate basis for rejecting symptom testimony. *Smartt v. Kijakazi*, 53 F.4th 489, 497-99 (9th Cir. 2022). And the record contains at least enough "relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Woods*, 32 F.4th at 788 (cleaned up). That record includes, for example, evidence that in November 2020, Palmer was cleared to work without any limitations despite her mental health challenges; evidence that Palmer did briefly work for the post office despite her mental health challenges; and evidence Palmer has the ability to perform some physical tasks in a largely sedentary setting, despite her acknowledged physical limitations. *See supra* pp. 3-6.

2. Palmer also appears to argue that the ALJ should have accepted the opinion of Dr. Ralph, who as noted, took the view that Palmer suffers from severe limitations in

her ability to work.  But the ALJ properly considered whether Dr. Ralph's opinion was contradicted by the medical data, and substantial evidence supports the ALJ's conclusion that it was so contradicted.  The ALJ also properly credited the opinion of Dr. Garito instead, based on the consistency of Dr. Garito's opinion with that same medical data.  Given the deferential standards of review, the Court has no ground to second-guess these conclusions.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision denying Palmer's application is AFFIRMED.

IT IS SO ORDERED.

DATED:  October 31, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

_____
Civil No. 24-00128 MWJS-KJM; *Timekia Palmer v. Martin O'Malley*; ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY